# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODNEY VALDEZ, | 1:09-cv-01555-JLT HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| R. K. WONG, Warden, | |
| Respondent. | ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 14, 2009, Petitioner filed his written consent to the jurisdiction of the United States Magistrate Judge for all purposes. (Doc. 6).

## PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections and Rehabilitation ("CDCR") serving a determinate sentence of six years and four months pursuant to a judgment of the Superior Court of California, County of Kings (the "Superior Court") in three separate criminal cases. Petitioner was convicted by jury trial of one count of battery resulting in serious bodily injury (Cal. Pen. Code § 243(d)), one count of resisting arrest resulting in serious bodily injury (Cal. Pen. Code § 148.10(a)), and two counts of resisting arrest (Cal. Pen. Code § 148(a)(1)), in case no. 06CM0219. (Doc. 18, Lodged Documents ("LD") 4, pp. 1-2). Petitioner pleaded no contest to an additional count of making criminal threats (Cal. Pen. Code § 422). (Id.). In case no. 06MC2907,

1    Petitioner was found guilty by a jury of willfully failing to appear in court in connection with the

2    felony charges in case no. 06CM0219, a violation of Cal. Pen. Code § 1320.5.  The jury also found

3    true an enhancement allegation that, at the time of his failure to appear, Petitioner was free on bail

4    within the meaning of Cal. Pen. Code § 12022.1.  Last, in case no. 05MC4418, Petitioner was found

5    guilty following a jury trial of misdemeanor diversion of construction funds, a violation of Cal. Pen.

6    Code § 484b.  (Id.).   On March 27, 2007, Petitioner was sentenced to a determinate term of six years

7    and four months.  (LD 4).

8         Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

9    Appellate District (the "5th DCA").  (LD 1-3).  On April 4, 2008, the 5th DCA, in an unpublished

10   decision, affirmed the judgment.  (LD 4).   Subsequently, Petitioner filed a petition for review in the

11   California Supreme Court.  (LD 27).  On June 18, 2008,  the state supreme court denied Petitioner's

12   petition for review.  (LD 28).

13        On August 10, 2009, Petitioner filed the instant petition in the United States District Court

14   for the Central District of California, raising two grounds for relief: (1) the trial court violated

15   Petitioner's due process rights by permitting introduction of a 17-year-old felony conviction for

16   impeachment purposes; and (2) the trial court violated Petitioner's due process rights by using an

17   unconstitutional instruction on proof beyond a reasonable doubt.  (Doc. 1).  Respondent's answer

18   was filed on June 16, 2010.  (Doc. 19).  Petitioner did not file a Traverse.

19        Respondent concedes that both grounds for relief in the petition have been fully exhausted.

20   (Doc. 19, p. 3).

21                              **FACTUAL BACKGROUND**

22        The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

23        **Case No. 05CM4418**

24        On June 27, 2005, John Lawrence paid defendant a $500 deposit for a $5000 roofing job
         defendant was to begin work on while Lawrence was on vacation.  Defendant cashed the
25        $500 check but never preformed [sic] the work he was hired to do and avoided Lawrence's
         attempts to contact him.
26
         In his defense, defendant claimed he used the funds to purchase supplies.  However, due to
27        financial problems eventually leading to bankruptcy, defendant was unable to start the job.

28   ///

**Case No. 06CM 219**

On December 12, 2005, defendant went into a Money Mart three times, trying to cash a check, and was belligerent towards employee Allison Debem, after she requested additional information from defendant before she would cash his check. Debem observed that defendant was carrying a police scanner when he came into the store.

After defendant left a third time, a telephone call came into the store. Debem recognized defendant's distinctive voice. He instructed that she leave $2500 in an alley next to the store and that her life depended on it. When Debem moved towards the door to lock it, defendant told her not to move and to turn and go to the safe. He also said he had a scanner and that she knew he did. Now hysterical, Debem ran into the restroom, locked herself in, and called 911. During the incident, Debem had her store manager on a different phone. She put the two phones together and the store manager heard defendant tell Debem to leave $2500 outside the store and not to call the police.

On defendant's behalf, Fannie Loya testified that on December 12, 2005, her husband wrote defendant a check for $400 for work he did at their house. Defendant testified he went to Money Mart twice that day to cash a $400 compensation check. He denied that he went to the Money Mart a third time or threatened anyone. He was at his children's Christmas concert at a nearby church. Three other witnesses, including defendant's mother, testified to seeing defendant at the concert.

On December 16, 2005, police officers went to defendant's house in connection with the Money Mart incident. After two officers knocked on the door, defendant called down from an upstairs window that he had just gotten out of the shower and asked if he could meet them at the station, but the officers indicated they would wait for him. A moment later, defendant emerged from a side door into the front patio. He started walking towards one of the officers, but then his eyes suddenly got big and he turned and ran a few feet back into the house. The officers grabbed him by his arms, pulled him back onto the patio, and he started to struggle. Defendant was told he was under arrest for the Money Mart incident.

A third officer, Dale Williams, ran up to assist the other two officers. Defendant head-butted Officer Williams and broke the officer's nose. Officer Williams also felt a strong pull on his service revolver and yelled, "Let go of my gun." Later, defendant apologized to Officer Williams for head-butting him, but said it was all he could do since the other two officers were holding his arms.

In his defense, defendant claims the officers charged him and grabbed his arms when he came out of the house and denied that he tried to run back inside. They did not tell defendant he was under arrest. Defendant also denied that he head-butted Officer Williams, claiming they accidentally knocked heads when the officer ran "full steam" into defendant. Defendant also denied trying to grab the officer's firearm, explaining it was impossible because his arms and legs were being held by the other officers. According to defendant, the officers slammed him face down into the ground and punched and kicked him while he was on the ground.

At the hospital, defendant did not apologize to Officer Williams for intentionally head-butting him or for inflicting any injury on him. Rather, he simply said to the officer, "Sorry we met this way."

Raymond Sandoval, a friend and neighbor of defendant, who witnessed the arrest, testified that the officers grabbed defendant as soon as he came out of the house. Sandoval did not see defendant head-butt Officer Williams, but he reported that he saw one of the officers punching defendant in the face two or three times.

1    **Case No. 06CM2907**

2    Defendant failed to appear in court on April 28, 2006, as ordered in connection with the
     charges stemming from the Money Market [sic] incident.

3

4    (LD 4, pp. 2-5).

5                                              **DISCUSSION**

6    **I.  Jurisdiction**

7        Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

8    to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

9    the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362,

10   375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the

11   United States Constitution.  The challenged conviction arises out of the Kings County Superior

12   Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.

13   § 2241(d).  Accordingly, the Court has jurisdiction over this action.

14       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

15   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

16   Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries

17   v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on

18   other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed

19   after statute's enactment).  The instant proceedings were initiated by the filing of the original petition

20   on August 10, 2009, after the enactment of the AEDPA, and thus this case is governed by the

21   AEDPA.

22   **II.  Legal Standard of Review**

23       A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

24   can show that the state court's adjudication of his claim:

25        (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
          clearly established Federal law, as determined by the Supreme Court of the United States; or

26
          (2)  resulted in a decision that "was based on an unreasonable determination of
27        the facts in light of the evidence presented in the State court proceeding.

28   28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

1   at 412-413.

2          The first prong of federal habeas review involves the "contrary to" and "unreasonable

3   application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed

4   questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d

5   628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it

6   applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

7   confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

8   reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor,

9   529 U.S. at 405. A state court decision involves an "unreasonable application" of clearly established

10  federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively

11  unreasonable manner." Brown v. Payton, 544 U.S. at 141; Woodford v. Visciotti, 537 U.S. 19, 24-

12  25 (2002).

13         Consequently, a federal court may not grant habeas relief simply because the state court's

14  decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

15  Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409). Section

16  2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or

17  principles set forth by [the Supreme Court] at the time a state court renders its decision." Lockyer v.

18  Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

19         The second prong of federal habeas review involves the "unreasonable determination" clause

20  of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings.

21  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under

22  § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

23  claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

24  the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v.

25  Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

26  thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").

27  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

28  debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.

1   2004), cert.denied, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

2          The AEDPA also requires that considerable deference be given to a state court's factual

3   findings.  "Factual determinations by state courts are presumed correct absent clear and convincing

4   evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

5   based on a factual determination will not be overturned on factual grounds unless objectively

6   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  <u>Miller-</u>

7   <u>El v. Cockrell</u>, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

8   historical or pure fact, not mixed questions of fact and law.  <u>See Lambert v. Blodgett</u>, 393 F.3d 943,

9   976-077 (2004).

10         To determine whether habeas relief is available under § 2254(d),  the federal court looks to

11  the last reasoned state court decision as the basis of the state court's decision.  <u>See Ylst v.</u>

12  <u>Nunnemaker</u>, 501 U.S. 979, 803 (1991);  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

13  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its

14  decision, the federal habeas court conducts "an independent review of the record...to determine

15  whether the state court [was objectively unreasonable] in its application of controlling federal law."

16  <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2002); <u>see Himes v. Thompson</u>, 336 F.3d 848, 853

17  (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's

18  ultimate decisions."  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court

19  denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the

20  deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's

21  claims de novo.  <u>Pirtle v. Morgan</u>, 313 F.3d at 1167.

22         The prejudicial impact of any constitutional error is assessed by asking whether the error had

23  "a substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht v.</u>

24  <u>Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007)(holding

25  that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it

26  for harmlessness).  Some constitutional errors, however, do not require that the petitioner

27  demonstrate prejudice.  <u>See Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991); <u>United States v.</u>

28  <u>Cronic</u>, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA

1   alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

2   Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the

3   Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque,

4   555 F.3d 830, 835 (9th Cir. 2009).

5   **III.  Review of Petitioner's Claims.**

6   The instant petition itself alleges the following as its sole ground for relief:

7   **Ground One**          **The trial court erred in admitting a 17-year-old conviction for
                            impeachment purposes.**

8

9   **Ground Two**          **The jury instruction on proof beyond a reasonable doubt is
                            unconstitutional.**

10

11

12  **Ground One**          **The trial court erred in admitting a 17-year-old conviction for impeachment
                            purposes.**

13      A.  State Court Proceedings.

14      At trial, the court permitted the prosecutor to impeach Petitioner's testimony with evidence of

15  a1989 conviction for transporting narcotics.  In his direct appeal, Petitioner contended that the

16  conviction was too remote and that its admission violated California law governing admission of

17  prior convictions.  (LD 27, pp. 4-7).  Petitioner's argument to the California Supreme Court was

18  grounded entirely in state law; indeed, nowhere in his argument to the state supreme court did

19  Petitioner reference any federal constitutional law.   The last reasoned decision was by the 5th DCA,

20  which rejected Petitioner's argument exclusively on state court grounds:

21          In deciding whether to admit a defendant's prior convictions, the trial court is guided, but not
            bound, by the factors set forth in People v. Beagle (1972) 6 Cal.3d 441 (Beagle). [Citations

22          omitted].  These factors are: (1) the conduct's probative value for honesty; (2) the remoteness
            of the prior conviction; (3) the similarity between the impeachment conviction and the crime

23          charged; and (4) the effect on the defendant who does not testify out of fear of being
            prejudiced by impeachment of prior convictions. [Citations omitted].

24

25  (LD 4, p. 7).

26      The 5th DCA then recounted the trial court's analysis of the issue, offered its own assessment

27  of whether the Beagle factors had been met in Petitioner's case, and concluded that the 1989

28  conviction was clearly a crime of moral turpitude and that "it was not too remote to be used for

1    impeachment purposes."  (LD 4, pp. 7-8).

2           B.   Failure To State A Cognizable Habeas Claim.

3           As previously stated, the basic scope of habeas corpus is prescribed by statute.  Subsection

4    (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not

5    extend to a prisoner unless he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a)

6    states:

7           The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
            entertain an application for a writ of habeas corpus in behalf of a person in
8           custody pursuant to a judgment of a State court *only on the ground that he is in
            custody in violation of the Constitution or laws or treaties of the United States*.

9

10   (emphasis added).  See also Rule 1 to the Rules Governing Section 2254 Cases in the United States

11   District Court.  "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S.

12   at 67, *quoting*, Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  "[I]t is not the province of a federal

13   habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at

14   67-68.  "A state court's procedural or evidentiary ruling is not subject to federal habeas review unless

15   the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory

16   provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process."

17   Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995); see Pulley v. Harris, 465 U.S. 37, 41 (1984);

18   Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.1991); Middleton v. Cupp, 768 F.2d 1083,

19   1085 (9th Cir.1985), *cert. denied*, 478 U.S. 1021 (1986).  Therefore, "a federal court cannot disturb

20   on due process grounds a state court's decision to admit evidence unless the admission of the

21   evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair."  Walter, 45

22   F.3d at 1357.

23          Petitioner's contention that the trial court abused its discretion in admitting evidence of the

24   1989 conviction for impeachment purposes fails to present a federal question.  Petitioner does not

25   assert a violation of the Constitution or federal law.  Petitioner fails to cite any relevant federal

26   authority for his arguments that would elevate what is clearly framed as a state law issue to a federal

27   question.  It thus appears to the Court that Petitioner's claim is premised exclusively on California

28   law.  Consequently, Petitioner's claim is not cognizable on federal habeas review and must be

1   denied.

2          C.   The Claim Is Barred Under The AEDPA.

3          Under the AEDPA, the Court's guiding principle is whether the state court adjudication is

4   contrary to or and unreasonable extension of "clearly established federal law."  28 U.S.C. §

5   2254(d)(1).  On multiple occasions the United States Court of Appeals for the Ninth Circuit has

6   expressly rejected habeas claims premised on the admission of a prior conviction on the grounds that

7   no clearly established federal law exists.  Alberni v. McDaniel, 458 F.3d 860, 863 (9th Cir. 2006)(In

8   Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475 (1991), the United States Supreme Court

9   expressly left open the question of whether admission of prior convictions could constitute a due

10   process violation); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008)(no clearly established

11   Supreme Court precedent holding that the admission of propensity evidence is unconstitutional, and

12   thus the Ninth Circuit could not hold the state's rejection of the claim contrary to clearly established

13   federal precedent); see Estelle, 502 U.S. at 75, n. 5 ("Because we need not reach the issue, we

14   express no opinion on whether a state would violate the Due Process Clause if it permitted the use of

15   'prior crimes' evidence to show propensity to commit a charged crime.").

16          Since Alberni and Mejia were decided, the United States Supreme Court has not decided any

17   cases that would constitute clearly established federal law on the issue of the admission of prior

18   convictions.  Accordingly, in the absence of any clearly established federal law, this Court cannot

19   conclude that the state court's adjudication of this issue violated clearly established federal law.

20   Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004)("If no Supreme Court precedent creates clearly

21   established federal law relating to the legal issue the habeas petitioner raised in state court, the state

22   court's decision cannot be contrary to or an unreasonable application of clearly established federal

23   law."). Thus, the claim is barred under 28 U.S.C. § 2254(d)(1), and must therefore be rejected.

24   **Ground Two**          **The instruction on proof beyond a reasonable doubt is unconstitutional
                             and thus violated Petitioner's right to a fair trial.**

25

26          Petitioner contends that trial court's use of CALCRIM No. 220 on reasonable doubt violated

27   his right to a fair trial because the instruction failed to clarify the concept of "abiding conviction,"

28   thus rendering the instruction unconstitutionally ambiguous.

1      A.      General Principles of Instructional Error.

2          In determining whether instructional error warrants habeas relief, a habeas court must

3    consider "'whether the ailing instruction by itself so infected the entire trial that the resulting

4    conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or

5    even universally condemned.'"  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977)

6    (quoting Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S.

7    2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed

8    under the standard in Brecht v. Abrahamson, 507 U.S. at 637--whether the error had a substantial

9    and injurious effect or influence in determining the jury's verdict.).

10         In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility

11   at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

12   County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224 (1979); In re

13   Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970).  A permissive inference is one of the most

14   common evidentiary devices, which allows, but does not require, the trier of fact to infer the

15   elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind

16   on the defendant.  Ulster, 442 U.S. at 157, 99 S.Ct. at 2224.  "Because this permissive presumption

17   leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it

18   affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the

19   case, there is no rational way the trier could make the connection permitted by the inference."  Id.,

20   442 U.S. at 157, 99 S.Ct. at 2225; U.S. v. Warren, 25 F.3d 890, 897 (9th Cir. 1994); Sterling v. Roe,

21   2002 WL 826807 (N.D. Cal. 2002).  "A permissive inference violates the Due Process Clause only if

22   the suggested conclusion is not one that reason and common sense justify in light of the proven facts

23   before the jury."  Francis v. Franklin, 471 U.S. 307, 314-315 (1985).

24       B.      The State Court Adjudication Was Not Contrary To Or An Unreasonable

25   Application Of Clearly Established Federal Law.

26         The Due Process Clause allows conviction only if the prosecution proves beyond a

27   reasonable doubt every element of the charged crime.  This standard reduces the chance that an

28   innocent person will be conviction.  In re Winship, 397 U.S. at 362.  Winship, however, does not

1   require that every single fact upon which the jury relies be proven to a reasonable doubt.  Many facts

2   not proven to that standard may, collectively, allow the jury to infer that an element of the crime is

3   proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they

4   cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409

5   U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates

6   the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).

7   A judge can violate a defendant's rights by giving an instruction that undercuts the force of an

8   otherwise proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103;

9   Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

10        When a jury instruction is susceptible to a reading that would render the verdict

11   unconstitutional and another that would generate a proper verdict, the reviewing court considers the

12   challenged instruction in light of the full jury charge and in the context of the entire trial.  See

13   Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675

14   (1975)(consider context of whole trial).  The court must then decide whether there is a reasonable

15   likelihood that the jury applied the challenged instruction in an unconstitutional manner.  Estelle, 502

16   U.S. at 72.  A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-

17   a-reasonable-doubt instruction.  Naughten, 414 U.S. at 149-150.

18        The jury was instructed with revised version of CALCRIM No. 220 as follows:

19        The fact that a criminal charge has been filed against the defendant is not evidence that the
          charge is true.  You must not be biased against the defendant just because he has been
20        arrested, charged with a crime, or brought to trial.

21        A defendant in a criminal trial is presumed to be innocent.  This presumption requires that the
          People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People
22        must prove something, I mean they must prove it beyond a reasonable doubt.

23        Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the
          charge is true.  The evidence need not eliminate all possible doubt because everything in life
24        is open to some possible or imaginary doubt.

25        In deciding whether the People have proved their case beyond a reasonable doubt, you must
          impartially compare and consider all the evidence that was received throughout the entire
26        trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is
          entitled to an acquittal and you must find him not guilty.

27

28   (LD 21, pp. 2025-2026).

1    In its opinion, the 5th DCA began by observing that Cal. Pen. Code 1066 provides as follows:

2    A defendant in a criminal action is presumed to be innocent until the contrary is proved, and
     in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is
3    entitled to an acquittal, but the effect of this presumption is only to place upon the state the
     burden of proving him or her guilty beyond a reasonable doubt.  Reasonable doubt is defined
4    as follows: 'It is not a mere possible doubt; because everything relating to human affairs is
     open to some possible or imaginary doubt.  It is that state of the case, which, after the entire
5    comparison and consideration of all the evidence, leaves the minds of jurors in that condition
     that they cannot say they feel an *abiding conviction* of the truth of the charge.'"

6

7    (LD 4, p. 8, n. 3).

8    Petitioner argued in his appeal that the instruction failed to track the language of the statute

9    regarding "abiding conviction" such that the instruction would be ambiguous to the jurors.  The 5th

10   DCA rejected Petitioner's claim, reasoning as follows:

11   CALCRIM No. 220 plainly required the prosecutor to prove the defendant guilty beyond a
     reasonable doubt.  Indeed, the final sentence of the instruction stated: "unless the evidence
12   proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you
     must find him not guilty."  The trial court also instructed with CALCRIM No. 103 regarding
13   the presumption of innocence and the prosecution's burden of proving every element of the
     crimes beyond a reasonable doubt.  This instruction reiterated the prosecution's burden of
14   proof.

15   Furthermore, we do not believe the jurors, when instructed simply to reach an "abiding
     conviction"–without being informed that an abiding conviction is a feeling, as stated in
16   section 1096–failed to give the case the grave consideration necessary or failed to recognize
     the need for "subjective certitude."  An abiding conviction, even without further explanation,
17   connotes the weighty nature of the judgment and the importance of the decision. [Citations
     omitted.] Employing plain language, CALCRIM Nos. 103 and 220 correctly conveyed the
18   concept of reasonable doubt in the instant case.

19   Accordingly, we conclude there is no reasonable likelihood that the jurors understood the
     instructions as diminishing the seriousness of the task and thereby diluting either the
20   presumption of innocence or the reasonable doubt standard.  In other words, there is no
     reasonable likelihood that the jurors applied the challenged instruction in a way that violates
21   the Constitution.

22   (LD 4, p. 10).

23   In reaching its decision, the 5th DCA expressly cited <u>Winship</u> as requiring proof beyond a

24   reasonable doubt in order to satisfy due process concerns, and cited <u>Victor v. Nebraska</u>, 511 U.S. 1, 5

25   (1994), for the propositions that there is no standard formula for instructing on the meaning of

26   reasonable doubt and that as "long as the court instructs the jury on the necessity that the defendant's

27   guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form

28   of words be used in advising the jury of the government's burden of proof."  (LD 4, p. 9).

1    Thus, the state court identified and applied the correct federal standard, i.e., the clearly

2    established federal law upon which any AEDPA analysis must be predicated.  The only remaining

3    issue is whether the state court adjudication is contrary to or an unreasonable application of this

4    clearly established law.

5         A state court's determination that a claim lacks merit precludes federal habeas relief so long

6    as "fairminded jurists could disagree" on the correctness of the state court's decision.  Harrington v.

7    Richter, ___U.S.___, 131 S.Ct. 770, 786 (2011)(quoting Yarborough v. Alvarado, 541 U.S. 652,

8    664, 124 S.Ct. 2140 (2004)).  Moreover, the AEDPA imposes a "highly deferential standard for

9    evaluating state-court rulings, and demands that state-court decisions be given the benefit of the

10   doubt." Renico v. Lett, 559 U.S. ___, 130 S.Ct. 1855, 1862 (2010).

11        As the 5th DCA noted, the phrase "abiding conviction," without further definition, appears to

12   adequately convey the gravity of the prosecution's burden; certainly, it does nothing to diminish it in

13   the eyes of a reasonable juror.  Furthermore, nothing in the legal arguments presented in Petitioner's

14   direct appeal or in the instant petition persuades the Court to the contrary.  Thus, according, as the

15   Court must, the state courts the required deference under the AEDPA, this Court simply cannot say

16   that the state court's adjudication that the meaning of the phrase "abiding conviction" was adequately

17   conveyed to the jurors by CALCRIM No. 220 and that the instruction, together with all of the other

18   instructions, adequately informed the jury of the reasonable doubt standard, were adjudications so

19   patently incorrect that no "fairminded jurists" could disagree as to their lack of merit.

20        For the foregoing reasons, the Court concludes that the state court adjudication of Petitioner's

21   claims was neither contrary to nor an unreasonable application of clearly established federal law.

22   Accordingly, the Court denies with prejudice the petition for writ of habeas corpus.

23        Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

24   writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition,

25   and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336

26   (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28

27   U.S.C. § 2253, which provides as follows:

28        (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge,

1    the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

2    (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

3

4    (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

5         (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

6         (B) the final order in a proceeding under section 2255.

7    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

8    (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

9         If a court denied a petitioner's petition, the court may only issue a certificate of appealability

10   when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. §

11   2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists

12   could debate whether (or, for that matter, agree that) the petition should have been resolved in a

13   different manner or that the issues presented were 'adequate to deserve encouragement to proceed

14   further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880,

15   893 (1983)).

16        In the present case, the Court finds that Petitioner has not made the required substantial

17   showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.

18   Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal

19   habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.

20   Accordingly, the Court DECLINES to issue a certificate of appealability.

21                                              **ORDER**

22        For the foregoing reasons, the Court HEREBY ORDERS as follows:

23        1.  The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

24        2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

25        3.  The Court DECLINES to issue a certificate of appealability.

26   IT IS SO ORDERED.

27   Dated:   **September 23, 2011**                    **/s/ Jennifer L. Thurston**
                                                 UNITED STATES MAGISTRATE JUDGE
28